[991 NYS2d 246]

In the Matter of ANN-MARIE FITZPATRICK et al., on Behalf of Themselves and All Others Similarly Situated, Petitioners, v COUNTY OF ORANGE et al., Respondents.

Supreme Court, Orange County, June 16, 2014

## APPEARANCES OF COUNSEL

*Langdon C. Chapman, County Attorney*, Goshen, for respondents.

*Sussman & Watkins*, Goshen, for petitioners.

### OPINION OF THE COURT

ELAINE SLOBOD, J.

Petitioners are residents and employees of The Valley View Center for Nursing Care and Rehabilitation (hereinafter Valley View). Those who are employees are members of the Civil Service Employees Association. The Civil Service Employees Association, however, is not a party. They bring this CPLR article 78 proceeding to review a determination of the Orange County Legislature, dated April 9, 2014 which, by resolution (Resolution No. 98 of 2014), determined that Valley View is not required for use by the County and authorized the formation of the Orange County Valley View Development Corporation (hereinafter the LDC) pursuant to section 1411 of the Not-For-Profit Corporation Law to assist in disposing of Valley View. The resolution further provides that the LDC shall not transfer or lease the facility before December 31, 2014 and that if it fails to do so before December 31, 2017 the LDC's ability to transfer Valley View shall be limited to transferring it back to the County. The resolution was adopted by simple majority vote (12 votes to approve and 9 not to approve).

Petitioners do not claim that the determination was arbitrary and capricious recognizing, the court assumes, that any validly adopted legislative determination that the County should stop running a nursing home is beyond the scope of the court's review. The court expresses no opinion in this regard either way; the issue is one for the legislative branch, not the judicial branch. A legislative choice between competing policy considerations is not a concern for the court (*see e.g. Arroyo v Board of Educ. of City of N.Y.*, 110 AD3d 17 [2013]). Petitioners do contend, however, that the resolution adopted was contrary to law and the illegality of a legislative resolution is a matter for the court. Essentially they present two arguments.

County Law § 215, enacted in 1909, provides in relevant part:

"When the board of supervisors[1] shall determine that any county real property is no longer necessary for public use such board by resolution adopted by the affirmative vote of two-thirds of the total membership of the board taken by roll call and entered in the minutes, may sell and convey all the right, title and interest of the county therein." (County Law § 215 [5].)

Petitioners reason that the resolution is invalid since two thirds of the County Legislature did not approve it.

The second argument is that the resolution is contrary to the provisions of the County Charter. The County Charter provides that the County Legislature may abolish County administrative units not headed by elected officials by local law (Orange County Charter, art II, § 2.02 [f]). Since, petitioners argue, the resolution effectively abolishes the Department of Residential Health Care Services the legislature was required to do so by local law, not a resolution.

Respondents have answered the petition and move to dismiss pursuant to CPLR 7804 (f); 3211 (a) (1) (documentary evidence), (3)[2] (standing to sue) and (7) (failure to state a cause of action). Since respondents have joined issue by serving an answer they move, alternatively, pursuant to CPLR 3212 (summary judgment).

---

**1.** County Law § 150-a provides that where, as in Orange County, there is a county legislative body, that body shall have the powers and functions of a board of supervisors.

**2.** The affidavit of Sharon Worthy-Spiegl dated May 5, 2014 actually invokes CPLR 3211 (a) (2) (subject matter jurisdiction). Since no argument is advanced in this regard and respondents attack petitioners' standing to sue, the court deems the reference as being to CPLR 3211 (a) (3).

## Standing

The court will first discuss the standing issue since it is the threshold issue. If standing is denied, petitioners may not seek judicial redress. If petitioners have standing, the court must adjudicate the underlying merits of this proceeding (*see Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 812 [2003]).

██ In order to demonstrate standing, petitioners must demonstrate an injury-in-fact that is in some way different from that of the public at large (*see Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761 [1991]) and that they will suffer a particularized and concrete harm as a result of the challenged action (*see New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207 [2004]). Here, the petitioners are employees and residents of Valley View. The employee petitioners are also employees of the County of Orange. If Valley View is transferred to a private operator, they will lose their civil service status and cease to be county employees, a fact which is not "speculative" as respondents claim. The resolution is the first step on a journey with a destination of taking away the employees' civil service status. The resident petitioners are, of course, directly affected by a change in ownership of their home and, similarly, will no longer be residents of a facility operated by the county government. Accordingly, the court finds that petitioners have standing. If these petitioners do not have standing to bring this proceeding the court is at a loss as to who would have a more direct interest.

Moreover, the court finds a justiciable controversy as to whether the resolution was enacted in violation of statutory law or the County Charter. Contrary to respondents' contention, petitioners are not asking the court for an advisory opinion, but an adjudication as to whether the resolution was validly adopted. The limitations period for a challenge of a legislative resolution is four months (*see Gress v Brown*, 20 NY3d 957 [2012]; *Solnick v Whalen*, 49 NY2d 224 [1980]). Were petitioners to wait until the LDC is transferred to a private operator, as respondents appear to argue, respondents would no doubt then argue, and successfully, that the challenge would be time-barred.

## The Merits

Sixty years after County Law § 215 was enacted, the New York State Legislature enacted section 1411 of the Not-For-Profit Corporation Law pursuant to which the respondent

County Legislature created the LDC. Subdivision (d) provides in relevant part:

> "(1) The local legislative body of a county . . . may by resolution determine that specifically described real property . . . is not required for use by such county . . . and authorize the county . . . to sell or lease such real property to a local development corporation incorporated or reincorporated under this article . . .
>
> "(2) *Notwithstanding the provisions of any general, special or local law, charter or ordinance to the contrary,* such sale or lease may be made without appraisal, public notice, . . . or public bidding for such price or rental and upon such terms as may be agreed upon between the county, city, town or village and said local development corporation; provided, however, that in case of a lease the term may not exceed ninety-nine years" (emphasis added).

Respondents rely upon the language "Notwithstanding the provisions of any general, special or local law, charter or ordinance to the contrary" to say that the provisions of County Law § 215 are overridden if the legislature follows the procedure set forth as above stated in the Not-For-Profit Corporation Law. Petitioners argue that since the statute does not specifically mention the two-thirds vote requirement of County Law § 215 the legislature did not mean to include an exception to that law and that the relied upon language does not appear in subdivision (d) (1), which discusses the adoption of the resolution, but in subdivision (d) (2), which discusses the procedure *after* the resolution is adopted.

Respondents argue that section 1411 of the Not-For-Profit Corporation Law does not contain a supermajority provision. They contend that a supermajority is only needed when the County wishes to sell real property to the "highest responsible bidder." In contradistinction, they argue, when property is transferred to an LDC, the County can sell the property to the "best bidder" (respondents' mem of law at 12).

Legislative counsel states that resource was had to a "legislative manual" (which is not submitted as an exhibit) and that pursuant to that manual a supermajority vote is not required if property is sold through an LDC. Any manual is by nature a secondary legal source consisting of a compilation of statutes and regulations by the person preparing it and not determinative. Counsel also argues that Ulster County voted by simple

majority to sell its nursing home to an LDC. No evidence is submitted in this regard either, but, again, the fact that Ulster County did so, if true, is not determinative of the issue of law before the court either.

There is a paucity of authority construing the two statutes together. The parties point to none, either in case law or even opinions of state agencies like the Attorney General or the State Comptroller. The issue appears to be one of first impression. This may be because in other cases, the resolution to transfer a nursing home to an LDC was passed by a two-thirds majority. It was not discussed in *Civil Serv. Empls. Assn., Inc. Local 1000, AFSCME, AFL-CIO v County of Onondaga* (39 Misc 3d 1230[A], 2013 NY Slip Op 50813[U] [Sup Ct, Onondaga County 2013]) where Justice Donald A. Greenwood found standing. It was not discussed in *Matter of Civil Serv. Empls. Assn., Inc. v County of Saratoga* (Sup Ct, Saratoga County, July 10, 2013, Chauvin, J., index No. 1033-2013) because Justice Robert J. Chauvin did not find standing (with whom this court respectfully disagrees). There is no indication that the issue was raised before Acting Justice James P. Punch in *Matter of Civil Serv. Empls. Assn., Inc. v Orleans County* (Sup Ct, Orleans County, Oct. 1, 2013, Punch, J., index No. 41032-2013).

In the absence of any other guidance, the court must resort to well established principles of statutory construction to resolve the issue and perform some judicial heavy lifting.

The court begins with the principles that "[i]f the intent of the lawmaking body is not clear, the court in construing a statute will apply established rules or canons of construction, the purpose of such rules being to discover the true intention of the law" (McKinney's Cons Laws of NY, Book 1, Statutes § 91).

"Statutes will not be construed as to render them ineffective" (McKinney's Cons Laws of NY, Book 1, Statutes § 144). "A change in long established rules of law is not deemed to have been intended by the Legislature in the absence of a clear manifestation of such intention" (McKinney's Cons Laws of NY, Book 1, Statutes § 153).

The phrase in pari materia is applied to statutes or general laws usually enacted at different times but with reference to the same subject matter (McKinney's Cons Laws of NY, Book 1, § 221). In accordance with general rules of construction, statutes which are in pari materia are to be construed together as though forming part of the same statute (*id.*).

With these guiding principles the court compares the two statutory provisions at issue.

> "When the board of supervisors shall determine that any county real property is no longer necessary for public use such board by resolution adopted by the affirmative vote of two-thirds of the total membership of the board taken by roll call and entered in the minutes, may sell and convey all the right, title and interest of the county therein." (County Law § 215 [5].)
>
> "(1) The local legislative body of a county . . . may by resolution determine that specifically described real property . . . is not required for use by such county . . . and authorize the county . . . to sell or lease such real property to a local development corporation incorporated or reincorporated under this article." (N-PCL 1411 [d] [1].)

Both statutes concern themselves with disposition of county real property. At the time the latter statute was enacted the former statute had been the law of the State of New York for some 60 years. When the legislature enacted the second statute, it did not introduce the phrase "notwithstanding the provisions of any general, special or local law, charter or ordinance to the contrary" until after the clause requiring a legislative determination that county owned real property was no longer required for use by the county. Had the legislature wished to say "Notwithstanding the provisions of County Law § 215 (5) (which had been in existence for 60 years), the resolution may be made by a simple majority of the local legislative body" it presumably could have done so. The only distinction which may be drawn between the two statutes is that the older one speaks in terms of property being "no longer necessary for public use" and the other speaks in terms of property not being "required for use by [the] county." The argument that any meaningful distinction between the two standards may be drawn is not persuasive.

Having concluded that the resolution must be invalidated since it was unsupported by sufficient affirmative votes, the court does not reach the second issue petitioners present. The court observes, however, when the Orange County Legislature brought a CPLR article 78 proceeding against then County Executive Edward Diana to restrain him from unilaterally closing Valley View (see *Orange County Legislature v Diana*, 40 Misc 3d 278 [Sup Ct, Orange County 2013, Onofry, J.]) it argued that

closing Valley View would effectively abolish the Department of Residential Health Care Services.

Settle judgment granting the petition to the extent that the court will annul the determination as being contrary to County Law § 215 (5), containing a decretal paragraph denying respondents' motion to dismiss, without costs or disbursements.